All right, Mr Car. You're prepared. Please proceed. Thank you, Your Honor. May it please the court, the opposing counsel, Aaron Carr on behalf of the appellate Marshaun Merritt. We've asserted two errors in relation to the calculation of Mr Merritt's sentence. I'm going to focus my argument primarily on the four-level sentencing enhancement allowed by Walker, but please interrupt me if you wish to discuss the other. Now, briefly, some facts of this case. Mr Merritt pled guilty to the charge of felon in possession of ammunition. This case originates from a traffic stop in Mr Merritt on December 26, 2018. Mr Merritt was pulled over by Des Moines police for allegedly failing to stop at a stop sign. After the officers said they smelled marijuana, they searched the Merritt vehicle and found a loaded Glock 19. Mr Merritt was originally charged with state court, but later charged federally as part of a larger conspiracy. Importantly, there's no allegation that Mr Merritt was attempting to use the firearm or that he was engaging in any other criminal activity on December 26 other than possession of marijuana. Mr Carr, do you intend to make an argument that would take this case outside the Walker decision that our circuit is bound to? I don't, Your Honor. I'm going to draw some parallels, of course, to some cases that I think Walker is in opposition of, but I understand this court must sit in bank to overturn Walker. I know that Justice Grass, on numerous occasions, has noted that this decision should be revisited, and we agree with him. So as we continue to create our record on this, the only sentencing enhancement that was applicable to Mr Merritt had to do with the other felony offense of carrying weapons, Iowa Code section 724.4. This court held in Walker that that is a qualifying offense, and as I stated, we believe Walker is incorrectly decided. Nearly every felon possession case that I've ever done in federal court has this enhancement, and it's oftentimes one of the most awkward conversations to have with a client. They somehow committed two felony offenses by simply possessing a firearm because they're in city limits. Now in Stuckey, Justice Grass noted that the reality is that most felons in possession of a firearm are also going to violate the Iowa carrying weapons statute, and the courts have noted in Sanford that this was contrary to the sentencing commission's original purpose behind this enhancement. Now it makes sense to punish someone for using the firearm to create other chaos or other violence or felony offenses, but that there's none of that in this particular case. Now the thing with Walker is it's an elemental-based approach. It looks at the elements of the offense, and if there's a separate element to the offense, then it can be a qualifying offense. However, the Sixth Circuit in Kilgore we think has a better approach. They have a conduct-based approach. They know there must be a separation of time or distinction of conduct between the offenses. Now in Kilgore, he stole firearms from a police evidence room. Under Walker, that four-level enhancement would have applied because, of course, theft has a separate element. However, under the conduct-based approach, Kilgore noted that he only committed the offense by stealing the guns. It's the same action. Now we believe that's the appropriate model that this court should follow, and there's authority for that. In Lindquist, the Eighth Circuit had a case where the other felony offense was acquiring a handgun without a permit. Now, of course, not having a permit is a separate element. However, this court rejected that and did not apply the four-level enhancement because it found the action of acquiring a handgun and possessing it to the same conduct. Now, the state of Iowa has amended this lawsuit. And as of July 1, 2021, it will be an open carry state. And, of course, this would not no longer apply. However, it does apply to Mr. Merritt, and its effects are very real. And Mr. Merritt, his guidelines with the enhancement were 84 to 105 months. Without the enhancement, it would have been 57 to 71 months. Now, I know the court stated and the government's argued that this sentence of 105 months would have been applied to Mr. Merritt regardless of the enhancement. However, if we look at the 18 U.S.C. 3553A factors from Mr. Merritt, this seems disingenuous, would not be substantively reasonable. The 105-month sentence would have been a nearly 100% increase from the bottom of his guideline range. We supported the court with some mitigating factors that relate to Mr. Merritt. The fact that he was addicted to drugs and alcohol from age 10, and that several studies that we cited in a brief note, that that addiction robs the addict of their judgment, and that attacks the prefrontal cortex. And other studies have shown that their maturity level stops at the time they use drugs. And the Graham line of cases seems to support that as well. So we believe that this sentence would not have been supported by the evidence that was present. And I reserve the remainder of my time for rebuttal. All right. Thank you, Mr. Carr. Mr. Bertoli. Mr. Bertoli for Mr. Frencher. All right. Thank you. Can you hear me? Yes. All right. Great. Thank you. Mr. Frencher was charged with a number of drug and gun violations. He ended up entering into a conditional plea agreement in which he was allowed to plead guilty with the reservation of his right to assert an appeal. The suppression issue will be raised at the district court below, such that if that decision is overturned by the court of appeals, he has the right to choose to withdraw from his guilty plea and be in the same position that he was at the conclusion of the motion to suppress hearing. The motion to suppress dealt with an attempted exclusion of wiretap evidence that was obtained pursuant to an application in order for intercept of a communication device, which the- Mr. Bertoli? Yes. As I understand it, Mr. Frencher was not the driver of the vehicle nor the owner of the vehicle. What's your authority for him having standing to raise suppression on the facts of this case? I think I addressed the standing issue in my brief. I believe it's clear that because he was an occupant of that or in close proximity to where he was sitting in the vehicle, that creates standing. Well, I'm not familiar with that particular precedent. It seems that our precedents say that when you don't have a possessory interest, you're neither owner or standing is a significant issue. It's my assertion that under Rackus, because he was a passenger, he did have standing because the government presented evidence charging Frencher with possession of a firearm in furtherance of a crime of violence and being a felon in possession of a firearm and was using the guns found in the SUV as a result of that warrantless search. Rackus court indicates that rights assured by the Fourth Amendment are personal rights, which may be enforced by exclusion of evidence by one whose protection has been infringed by the search. Well, counsel, just for sake of argument, let's assume there is standing. Why isn't the search still justified or the stop justified in the search incident to it based on the information the police had at the time of the stop about the prospect of robbery that was in progress or potentially in progress? Well, again, that goes back again to the use of the wiretap evidence of whether or not that the wiretap issuance of the wiretap met the requirements of the code relating to particularly the necessity requirement. The necessity requirement of getting a wiretap shows that you basically got to exhaust all your other investigative techniques in order to justify getting a wiretap. In this case, while the affidavit, it's a very lengthy affidavit, goes into detail about what they had done, there isn't any there's nothing more than a conclusion that that wasn't enough. In this particular case, they charged 15 codefendants at all, but three of those were based upon non-wiretap evidence. They also had five controlled buys with Frencher that didn't involve use of a wiretap, so it seems to me that all of the investigative techniques that that were in place that before you can they got to exhaust before you get to getting a wiretap were successful and fruitful in this situation. Well, counsel, our cases say that the police don't have to exhaust all possible avenues of investigation. It just seems to imply that this isn't the first or among the first tried, and the facts here indicate it wasn't. The wiretap evidence, the wiretap was obtained after the law enforcement had engaged in a number of normal law investigative techniques, including controlled buys, interviews of other individuals, and the intent of the real intent of the wiretap was to gain the cooperation of the people that they were tapping, which in this case was Frencher, and it's my position and our position that motivation to gain cooperation is not a justification for a wiretap, right? Because that's really the real reason why they wanted to gather further information more than they already had on him, because they wanted to gain his cooperation, and gaining a suspect's cooperation as motivation certainly falls short of establishing necessity. So the original question about why wasn't the information about what the law enforcement possessed at the time of the stop sufficient to justify the stop and the search, taking it back if you exclude the wiretap evidence, all they've got really is this claim that another police officer's vehicle traveling the other direction from the Frencher vehicle in the middle of winter with both cars' windows rolled up smelled marijuana coming from that car, and I suggest that's preposterous because it's physically unable to be done. Well, the district court didn't rely on that. The district court made a finding of fact that indeed it was a basis absent any other for for justification of the reasonable suspicion that that vehicle possessed marijuana. Obviously, looking conclusive area, looking from the back end, they didn't find any marijuana. They found guns, but they didn't find any marijuana in that car that they supposedly allegedly smelled as the police officer was driving by with his windows rolled up and their couldn't even see in because the car's windows were tinted. So the point is that without the wiretap, there's no reasonable suspicion evidence left that would justify the stop of the motor vehicle. And obviously, Mr. Vitoli, your time's expired. Oh, I'm sorry. All right, I never got to the other issue, but I did brief it in my reply brief about enactment of the new revised. I would go hearing weapons charge. Thank you. All right, Mr. Curt. May it please the court. Co-counsel, counsel. My name is Adam current. I was co-counsel for the government throughout the proceedings at the district court with respect to both appellants, Mr. Frencher and Mr. Marshawn Merritt. I'll start with Mr. Merritt's arguments, your honors. This court, as is well noted, is bound by the prior panel rule with respect to the Walker decision with respect to a couple of comments that Mr. Carr made. I believe he said that almost all felon in possession cases in federal court in Iowa have the four level Walker enhancement. I don't find that to be the case. A significant portion of them do. However, Walker takes into account the additional danger posed when an individual brings a firearm into the community. It is not on all fours with what felon in possession is. One can violate the felon in possession laws by simply having a firearm and being prohibited in one's possession at a house or other location that is less dangerous than being in the community. With respect to the new laws, your honor, I would simply note that the law is anticipated to take effect in approximately seven weeks. That law was certainly was not even passed by the Iowa legislature at the time of both Mr. Frencher and Mr. Merritt's violations here, which were in December of 2018. The law had not even been passed. The law was also had not been passed when both Mr. Frencher and Mr. Merritt were sentenced at the district court. And so here we should look to what the law was at the time. And again, we anticipate that this law will come into effect in seven weeks, but it doesn't come into effect until July 1st. Changes could happen, although they're not anticipated. With respect to a final comment on Mr. Merritt's statement, the 105-month sentence imposed by Judge Ebinger, she made it very clear at the sentencing, your honors, that she would have imposed that sentence regardless as to whether the so-called Walker enhancement applied. I'm reading the sentencing transcript in whole. This is far from what appellant's counsel stated as disingenuous. She went through very closely the facts and circumstances involved in Mr. Merritt's offense. And I would say that here he had an extended magazine. The firearm was in his vehicle under the driver's seat, 30 rounds in the magazine, one in the chamber. Mr. Merritt and Judge Ebinger went through very thoroughly Mr. Merritt's history and characteristics. She considered both the mitigating and the aggravating circumstances, your honor, but with respect to her holding that she would have given 105 months regardless, she went through the fact that on December 26, 2018, Mr. Merritt was driving with that extended magazine firearm loaded in his vehicle in Des Moines. Five days later, so Mr. Merritt was arrested that night and on state charges and he bonded out. Five days later, New Year's Eve, in the early New Year's Day, January 1st, 2019, Mr. Merritt was at the location of a shooting at a local liquor store. The evidence was presented at sentencing as to the circumstances, surveillance video was provided. What happened there was Mr. Merritt was out with acquaintances and there was an exchange of gunfire between unknown individuals and persons in Mr. Merritt's group. Although Mr. Merritt did not and was not seen and we have no evidence that he fired his in response to the events that were unfolding. He then exited the liquor store with the handgun and then left the scene. This indicates, as Judge Ebbinger noted, a certain recidivism and a certain mentality that guns will be sought out and will be utilized and obtained by Mr. Merritt regardless. Five days went by. That caused significant concern to the court. In addition, Judge Ebbinger noted, and I quote, the defendants, quote, history of violence is of concern to the court, end quote. Judge Ebbinger then went through the multiple convictions of violence in Mr. Marshawn Merritt's past. She noted those. She went through those methodically. In perhaps the most vivid example of that in pre-sentence report, paragraph 139, your honor. In late 2011, Mr. Marshawn Merritt pulled up alongside a vehicle that was occupied by multiple females in Des Moines. He fired a handgun into the side of that vehicle, striking it in the passenger side door five times. And this was part of a rival gang feud. All of this evidence is in paragraph 139 of the pre-sentence report, and it was unobjected to. Judge Ebbinger rightfully decided, and certainly it was not an abuse of discretion for her to determine given all of these circumstances. His history, weighing the factors, both mitigating and aggravating that 105 months was the regardless as to the plus four enhancement here. Turning now to Appellant Frencher's arguments, your honor. I would start with your comment, your honor, with respect to standing. It is the government's position that Mr. Frencher does not have standing to contest the search of the Yukon. Now, granted, the stop of the Yukon is an infringement on his liberties, albeit a minimal, and he does have standing with respect to that. But with respect to the search, he does not have standing. The evidence in the record is very clear that Mr. Frencher and his brother were the passengers. The vehicle was driven by a Ms. Toya Strode. Mr. Frencher was a mere fleeting passenger. Ms. Strode testified and was called by Mr. Bertogli at the suppression hearing. And she testified, number one, that those guns were not hers. But she also testified that the Frenchers were mere passengers of hers and that it was her vehicle and that she was driving it. However, moving in, assuming for argument's sake that Mr. Frencher has standing for the search, we have probable cause for the search, I would suggest to the court in spades here. The court focused, the district court focused in on the information obtained from the wire interceptions. And the court gave credit to and found that law enforcement was rightfully concerned and rightfully believed, given the circumstances, that a robbery and an armed robbery was imminent. Given the circumstances, the entirety of the nine-minute audio recording of the intercept between defendant Jonathan Frencher, his brother, co-defendant Freddie Frencher, and an unknown male, the totality of it was provided as part of the motion to suppress and the suppression hearing. The court- Were the officers who conducted the stop aware of the contents of the intercept? Yes, Your Honor. And so the stop was conducted by a Des Moines, Marked Des Moines Police Unit. The driver of that unit was not aware of the wire. However, riding alongside of him was Officer Sean Herman. Officer Herman was a liaison between the FBI who was doing the wire and the Des Moines Police who were doing surveillance. So yes, there was an individual in the vehicle that was completely aware of the wire.  Even absent the wire, I believe that the police had certainly reasonable suspicion to stop the vehicle. Three officers smelled marijuana coming from the vehicle before it was even stopped. The court, the district court did not rely upon the officer's statements with respect to smelling the odor of marijuana. However, the district court did say, quote, I find their testimony to be credible, end quote. And that's with respect to their observing the marijuana odor. Counsel, how reasonable is it to, if the facts are as described, two vehicles, some, not a large distance, but some distance apart with windows rolled up at night, in the wintertime, how can the officers be confident, even if they smelled something, that the source of it was that vehicle? In your honor, the testimony at the suppression hearing went through methodically why it was that the officers had that reasonable conclusion. And it's with respect to how closely they were following the lack of other vehicles that were in the area at that time. And I would simply state your honor that it was not only the vehicle following the car, the marked vehicle that had officer Perez and officer Herman in it, both of who smelled marijuana. It was an additional marked vehicle. I believe it was unmarked driven by officer Bartak, who also independently smelled marijuana. I would say your honor that this is corroborated as well. One of the wire interceptions, it was a text interception from Mr. Frencher's or on Mr. Frencher's phone indicated that he quote had smoke, which the officers testified. I have smoke is slang term for I have marijuana to smoke. And so that is further corroborated. Reasonable suspicion to stop. The court made a finding that there was more than reasonable suspicion, whether the court relied solely on the intercepts, which the factual finding is that they were reasonable in determining in the circumstances that a robbery was imminent. So even if we agreed that there was reasonable suspicion to stop the vehicle based solely on alleged smell of marijuana, would that create probable cause to search the UConn? Not necessarily in and of itself, your honor. Certainly once they stopped, we get to the next step and officer Perez walks up to the door of the vehicle and then independently corroborates right next to the vehicle that in fact his prior detection of an odor was correct, that the vehicle smelled like marijuana. Not only did officer Perez confirm that immediately upon approaching the vehicle, which then gives him probable cause to search the vehicle. The officer Herman, who was in the marked vehicle behind the stopped UConn, also independently smelled it. He stated such on body cam. Another officer who approached to assist the scene remarked, sort of as an excited utterance that he could smell the marijuana as he approached. And so whether or not it amounted to probable cause simply on smelling it before they stopped, I don't think is a decision that needs to be made by this court because it was corroborated and it was confirmed by multiple officers upon stopping it. With respect, your honors, to the four-level enhancement for Mr. Frencher. Again, the prior panel rule applies with respect to application under Walker. However, the district court made very clear that the four-level enhancement also applies independently based upon the information that the court or that the officers, the finding by the court that Mr. Frencher was actively engaged. Those are the court's words, actively engaged in an attempt to commit an armed robbery. With respect to the wires, your honor, and I have about a minute left. With respect to the wire, the standard of review here gives some deference to the court that authorized the wire. Chief Judge Jarvie authorized the wire in early December of 2018. The standard is a district court's finding of necessity for a wire is a finding of fact, and this court reviews for clear air. A reviewing court must accord broad discretion to the district court's authorization of a wire tap. The necessity here, your honor, as the court pointed out, it's not a necessity as to whether there can be charges brought without a wire. The necessity here is the other means have not been able to undercover the full scope, the co-conspirators, locations, other involved individuals. And so the 20 pages in the affidavit here, your honor, are more than sufficient with respect to necessity. And your honors, I see that my time is up. I would simply ask that the court affirm both the sentences for Mr. Merritt and Mr. Frencher and affirm the district court with respect to the motion to suppress. Thank you, your honors. Thank you, Mr. Carr. Mr. Carr, your rebuttal. You're muted. Thank you. Your honors, the Walker Enhancement was referred to by both the court and by the government in its argument. It's so common that it has a name, the Walker Enhancement. Now, the exception in this case has really swallowed up the rule and that just cannot be allowed to continue. If we continue to see this Walker Enhancement applied to each one of these cases, it's going to continue to cause all of the Iowa defendants to have higher sentences than the rest. Now, like we said, the legislature may have taken care of this problem. However, as Mr. Curt noted, that law has not come into effect yet. So we can do something now to prevent that. Now, looking at the government's arguments with regard to why this sentence would have been substantively reasonable, even if this enhancement didn't apply, it really cited two things. It cited his criminal history and this event that occurred five days later. Well, Mr. Merritt's criminal history was taken into account with his criminal history category of five. Additionally, this event that happened five days later, Mr. Merritt was shopping in a convenience store and got shot at. He retreated to the back of the store as bullets shattered the glass as he and his cohorts were being attacked. He did not return fire. Others did. He shot shelter first. And then he did grab a firearm that is visible on camera. We'd acknowledge that. And he ran out of the store. But this factor that's supposed to be so egregious to him is that he got shot at. Now, that would simply not outweigh all the mitigating factors that we discussed and I'd encourage the court in our brief to read through some of those medical articles that we've cited as we believe those mitigating factors certainly support a sentence at or below the guidelines, not 100% above. So I see I'm out of time. So we would ask the court to revisit the Walker decision. Encourage your colleagues to do so on a full panel here. Thank you. Thank you, Mr. Carr. Mr. Bertoli, you exhausted your time on your opening. Unless you have something that you feel you need to urgently express, we'll conclude the argument time. Do you have something that you feel was expressed that you must reply to? I know, Your Honor. All right. Thank you, counsel, for both the appellants and for the government. We appreciate your appearance before the court this morning in this hearing and for the briefing that's been submitted. We'll take your case under advisement and render decision in due course. Thank you. Counsel, make your excuse. Thank you.